IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD AUBREY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 10-1604 |
| | : | |
| CITY OF BETHLEHEM, FIRE | : | |
| DEPARTMENT | : | |
| Defendant | : | |

M E M O R A N D U M

STENGEL, J.                                                                         February 22, 2011

Howard Aubrey brought this action against his former employer alleging a violation of the Americans with Disabilities Act and of the Pennsylvania Human Relations Act.[1] The defendant filed a motion to dismiss to which the plaintiff has responded. For the following reasons, I will grant the motion to dismiss in its entirety.

I. BACKGROUND

A. The Amended Complaint

Howard Aubrey lives in the city of Bethlehem, Pennsylvania, and worked there as a firefighter for twenty-seven years. The amended complaint alleges that in June 2006, Mr. Aubrey admitted himself to a dual-diagnosis facility for treatment of depression,

---

[1] While Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995). Accordingly, I shall specifically address only the ADA claim which analysis applies equally to the PHRA claim. Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996); see also Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (because the analysis for claims under the ADA is the same for claims under the PHRA, it is not necessary to perform a separate analysis).

suicidal ideation, and substance abuse, and returned to work on an undisclosed date.[2]  See Am. Compl. ¶¶ 5-7.  He was placed on an Employee Action Plan and diagnosed with "Post Traumatic Syndrome"[3] related to his job as a firefighter.  Id.  The amended complaint also alleges that, on an unspecified date, the defendant advised Mr. Aubrey to "stay away from work and continue his medical treatment for [post traumatic syndrome]." Id. ¶ 8.

In January 2007, the defendant posted a job advertisement for a fire inspector position.  Id. ¶ 9.  Mr. Aubrey applied for the position.  Id. ¶¶ 10, 20.  Although he had the most seniority and was fully-qualified, Mr. Aubrey was denied the position.  The defendant allegedly did not provide a reason for not awarding the position to Mr. Aubrey. Id. ¶ 11.

Also on an undisclosed date, the defendant requested that Mr. Aubrey obtain "an independent medical evaluation from a different medical examiner."  Id. ¶ 12.  The independent medical examiner confirmed the diagnosis of "post-traumatic syndrome," and declared that Mr. Aubrey was unfit to return to his duties as a firefighter.[4]  Id. ¶¶ 13-

---

[2] The allegation that he returned to work after this incident is belied by his deposition testimony where he indicated that he never returned to work afterwards.  See Aubrey Dep. at 33.

[3] At his deposition, Mr. Aubrey testified that Dr. Au of the Horsham Clinic diagnosed him with Post-Traumatic Stress Disorder in June 2006.  See Aubrey Dep. at 24.  I will assume that this impairment is the same one alleged in the amended complaint.

[4] Psychiatrist Abel A. Gonzalez, M.D., evaluated Mr. Aubrey on June 9, 2007, at the defendant's request.  See Def.'s Exh. D.  Dr. Gonzalez opined that "the intensity of [Mr. Aubrey's] symptoms continues to interfere and to compromise his regular capacity to work in

(continued...)

14.

The amended complaint further alleges that Mr. Aubrey had made several attempts to meet with the defendant to discuss his situation and his pension, but the defendant repeatedly refused to meet with him. Id. ¶¶ 15-17. He "went out of [sic] leave for his disability at the direction of his doctor." Again, no specific date was provided. Id. ¶ 18. While out on sick leave, Mr. Aubrey exhausted all of his vacation time and all other paid leave time. Id. ¶ 19.

Mr. Aubrey received a letter from the defendant "near the end of the expiration of his paid time off" that he was being considered for the fire inspector position. Id. ¶ 21. He continued to receive regular pay stubs from the defendant until approximately January 2009, which showed no income. Id. ¶¶ 22-23, 28. Mr. Aubrey remained an active member of his Union until the time of his retirement in February 2010. Id. ¶ 24. He alleges that he was never informed that his employment with the defendant was terminated. Id. ¶ 25.

**B. Discovery Limited to the Issue of Timeliness**

Because Mr. Aubrey believed that the defendant violated the ADA by not granting him the ability to work in any capacity, he filed a Charge of Discrimination with the

---

⁴(...continued)
*any* capacity." Id. (Emphasis added).

Equal Employment Opportunity Commission on May 8, 2009.[5]  Id. ¶¶ 29-31.  After several months, Mr. Aubrey's attorney requested a "notice of right to sue" from the EEOC.  Upon receipt of this notice, Mr. Aubrey filed a complaint in the Court of Common Pleas of Northampton County.  The defendant removed the action here because of the federal question presented, and subsequently filed its first motion to dismiss.  In response, Mr. Aubrey filed an amended complaint, which rendered the motion moot.  See Document #6.  The defendant then filed its second motion to dismiss, again arguing, *inter alia*, that Mr. Aubrey's claims are time-barred because Mr. Aubrey failed to file a Charge of Discrimination with the EEOC within the required 300 days of the date of the alleged employment discrimination, i.e., January 2007.[6]  Following a conference with counsel, I set a period for limited discovery and requested the defendant to file a supplemental brief limited to the untimeliness issue following the completion of certain depositions.  After the supplemental brief was filed, the plaintiff responded.

In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d

---

[5] The Charge was dually filed with the Pennsylvania Human Rights Commission.

[6] Although Rule 12(b) does not explicitly permit the assertion of a statute of limitations defense by a motion to dismiss, the so-called "Third Circuit Rule" allows a defendant to assert a limitations defense in a Rule 12(b)(6) motion "if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002).

Cir. 1993). A court may consider, however, an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document. Id. If a court considers matters outside the pleadings, our rules require that a motion to dismiss be converted to one for summary judgment. See FED.R.CIV.P. 12(d).[7] The rationale for the conversion is to afford the plaintiff an opportunity to respond. Pension Benefit Guar. Corp., 998 F.2d at 1196. When an amended complaint relies on a document, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute that evidence is greatly diminished. Id. at 1196-1197.

Here, it is not necessary to convert this motion to dismiss to one for summary judgment. The amended complaint contains gaps in the information provided along with unclear assertions which rendered it difficult to discern. I asked the parties to conduct limited discovery and submit supplemental briefs on the issue of untimeliness. The parties complied and have provided a much needed clarification of the time frame in this action. The documents which the parties submitted are undisputedly authentic and provided a basis for the plaintiff's claims in the amended complaint. Other documents are matters of public record and, as such, are appropriate to consider in deciding a motion to dismiss. The cited portions of depositions were considered in an effort to clarify the allegations of timeliness in the amended complaint. Furthermore, the plaintiff had the

---

[7] Rule 12(d) provides that "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

5

opportunity to respond to all of the documents submitted and the depositions taken. I also note that neither party objected to any of the evidence being considered under a motion to dismiss.

### 1. **Deposition of Mr. Aubrey**

At his deposition, Mr. Aubrey identified a prior civil rights action he filed against his former employer in the Court of Common Pleas of Northampton County. That action, filed in May 2008, alleged two counts of illegal retaliation for engaging in protected activity, one count of constructive discharge due to a hostile work environment, and one count of breach of contract. He claimed that he had been mistreated by the defendant and demoted in 2005 which led to his addiction to drugs and alcohol; and that he had continued to suffer psychological and physiological impairments which required treatment. The complaint did not include a claim under the ADA, and there was no associated Charge of Discrimination filed with the EEOC. In February 2009, the Honorable William F. Moran sustained the preliminary objections of the defendant and dismissed the complaint with prejudice, finding that the claims were barred by the statute of limitations.

After Judge Moran dismissed the action, Mr. Aubrey filed a Charge of Discrimination with the EEOC claiming a violation of the ADA. That Charge indicated that Mr. Aubrey last worked for the defendant in June 2006, and that he had last received salary and benefits from the defendant in October 2007. The Charge also indicated that

he had been denied the Fire Inspector position in January 2007.

Mr. Aubrey testified that his last working day for the defendant was in June 2006 when his sick leave began, and that he received a paycheck until October 2007. See Aubrey Dep. at 11. He described experiencing flashbacks from when he was injured fighting a fire in late May 2006 or early June 2006. Id. at 13.

Mr. Aubrey also testified that he had been planning for some time to transition from fire suppression to fire prevention, i.e., the inspection unit, and was waiting for an opening to a less stressful position within the Fire Department. Id. at 17.

Mr. Aubrey also stated that he was being treated by Andrea Richmond, a psychotherapist provided him through the defendant's Employee Assistance Program. Id. at 26. Miss Richmond and he discussed his transition to the inspection unit, and agreed that he could possibly be ready to move into that group in November 2006, a month before an inspector was known to be retiring from the department. Id. at 35. Mr. Aubrey believes that this transition plan was not communicated to the defendant. Id. at 36.

Mr. Aubrey remembers speaking with the Fire Commissioner once by telephone after the Commissioner wrote him a letter to inquire about Mr. Aubrey's situation. During their conversation, the Commissioner asked Mr. Aubrey to be sure that his therapist submitted a monthly update on his treatment. Id. at 37. Mr. Aubrey does not believe that he informed the defendant that he had decided not to return to work until he would be able to transition to the position of inspector. Id. at 38.

Mr. Aubrey subsequently encountered the Fire Commissioner at a neighborhood store. Mr. Aubrey told the Commissioner that he was doing much better, and wanted to return to work. Id. at 39. The Commissioner responded that an inspector's position was about to become available, and that Mr. Aubrey would have to come to the fire station and sign a bid sheet to apply for it. Id. Anxious to return to work, Mr. Aubrey went to the station and signed the sheet to be considered for the position. Although he had not been medically cleared to return to work, he was still permitted to sign the bid sheet for the position while out on sick leave. Id. at 39-40.

Mr. Aubrey sought the assistance of Miss Richmond who said that she would prepare the paperwork to clear him medically for the inspector's position, and that she would submit it to the defendant. Id. at 40-41. Mr. Aubrey is not certain whether Miss Richmond submitted the document or even whether she prepared it as promised.[8] Id. at 41.

As he was anticipating his return to work, Mr. Aubrey was contacted by Daryl Kulp, the President of the local union, during the first week of January 2007. Mr. Kulp notified Mr. Aubrey that the inspector position was given to another employee. Id. Mr. Aubrey said that he did not verify this with anyone at the defendant and did not speak to

---

[8] It is doubtful that Miss Richmond prepared such a document, however, because even after the inspector position was filled in January 2007, she continued to provide the defendant with monthly updates indicating that Mr. Aubrey would not be able to return to work due to his condition. See Document #10-4 at 2, 4, 9; see also Document #10-5 at 3, 8; Document #10-6 at 1, 2.

the Chief because he felt that he was supposed to go through the union. Id. at 42. Mr. Aubrey told Mr. Kulp that he wanted to file a grievance, and Mr. Kulp responded that he would file an unfair labor practice with the Business Administrator for the defendant. Id. at 43. Mr. Aubrey does not know if Mr. Kulp filed that document. Id. However, because he did not feel that the union was capable of handling the matter, Mr. Aubrey sought the assistance of counsel in January 2007, who began to handle all further communications with the defendant on his behalf. Id. at 44-45.

Mr. Aubrey further testified that his attorney received a letter on May 2, 2007, from the City Solicitor's office indicating that they had received notification from Miss Richmond which medically cleared Mr. Aubrey to return to work. The letter from the Solicitor's office directed Mr. Aubrey to report to work on May 7, 2007, for light duty. Id. at 148-149. Mr. Aubrey did not report for the light duty assignment as directed, and explained at his deposition that he believed the defendant could not ask him to perform light duty work unless he had been injured in the line of duty, which he indicated he was not. Id. at 149-150. Mr. Aubrey then testified that the City Solicitor had written a follow-up letter admitting that he had misunderstood Miss Richmond's notification, and that she had not, in fact, released Mr. Aubrey to work. Id. at 150. Miss Richmond sent another letter dated May 4, 2007, to clarify the misinterpretation. She reiterated that Mr. Aubrey has "the physical ability to do the work required." She continued, "However, I do not believe he is capable of returning to work at this time due to issues still being addressed."

Finally, Miss Richmond indicated, "Howard needs to continue the path he's on in therapy to prepare him to return to work.  However, he is not ready to be released to come back to work at this time."  (Emphasis in original).

The record contains a letter sent to Mr. Aubrey dated January 12, 2007, written by Commissioner George Barkanic.  The letter informed Mr. Aubrey that he was the only bidder for the position of inspector but that the department was not able to declare him the successful bidder because Mr. Aubrey had not complied with the condition of getting medical clearance to return to active duty.  See Def.'s Exh. D.  Mr. Aubrey testified that he did not recall that document, but conceded that he never requested a Fitness for Duty certificate from any healthcare provider, and never saw such a certificate that had been prepared on his behalf.  See Aubrey Dep. at 153, 156-157.

## 2. Deposition of Fire Commissioner George Barkanic

At his deposition, Commissioner Barkanic testified that in June 2006, he learned that there was an incident at the Aubrey home which resulted in Mr. Aubrey being involuntarily committed to the psychiatric unit at St. Luke's Hospital.  See Barkanic Dep. at 6-8.  As a result, the defendant suspended Mr. Aubrey with pay, but took away none of his accrued leave, pending further review.  Id. at 11.  Commissioner Barkanic remembers sending Mr. Aubrey a letter asking that he contact him to discuss his return to work, but Mr. Aubrey never complied with that request.  Id. at 12.  In fact, Commissioner Barkanic sent several letters to Mr. Aubrey over time requesting that Mr. Aubrey come to the office

to speak with the Commissioner, but Mr. Aubrey never responded and never went to see him.⁹  Id.  The letters suggested to Mr. Aubrey that he utilize the Employee Assistance Program to be cleared for work by the defendant's physicians.  Id.  It was Commissioner Barkanic's understanding that Mr. Aubrey's counsel had spoken with the City Solicitor's office regarding Mr. Aubrey's situation.  Id.

Commissioner Barkanic also testified that Mr. Aubrey had applied for the inspector position in January 2007, and that Mr. Aubrey was the most senior person.  Id. at 17, 19.  The Commissioner sent Mr. Aubrey a letter on January 12, 2007, indicating that he had been the only bidder for the position, but that he could not be awarded the position until: (1) Mr. Aubrey was cleared by the defendant's physicians to return to work; and (2) Mr. Aubrey actually returned to work.  Id.  The Commissioner added, "And once [Mr. Aubrey] returns to work, it's his."  Id. at 17.  Under the Collective Bargaining Agreement, a candidate for a position cannot be awarded that position until the candidate actually works in the position.  Id. at 21, 22, 36.  An employee is required to return to active duty in order to claim the position on which that employee bid.  The Commissioner stated that Lieutenant Burkhart holds the inspector position which would have been given to Mr. Aubrey had he returned to work.  Id. at 23.

When asked whether the defendant had ever terminated Mr. Aubrey, the

---

⁹ The Commissioner said that this lack of response is usually not acceptable, but Mr. Aubrey was never disciplined because he never returned to work.  The department does not discipline its employees *in absentia*.  See Barkanic Dep. at 16.

11

Commissioner responded that it is his understanding that because Mr. Aubrey never returned to his job after his leave under the Family Medical Leave Act was exhausted, he is considered to have abandoned his job. Id. at 16, 17, 27, 38. Accordingly, termination was not necessary.

Commissioner Barkanic testified that he had written letters to Mr. Aubrey approximately every month informing him that modified light duty is available to him, and that he could return to work on a limited basis with his physician's instructions. Id. at 38. These letters were also copied to Mr. Kulp, the President of the local union. Id. The last correspondence the defendant received from Mr. Aubrey's healthcare provider was dated December 5, 2007, indicating that Mr. Aubrey could not return to work, and that it was impossible to predict a return date at that time. Id. at 39.

### 3. **Deposition of Jean Zweifel, Director of Human Resources**

The plaintiff also deposed Jean Zweifel, the defendant's Director of Human Resources. Miss Zweifel testified that Mr. Aubrey had been approved for the "full twelve weeks" that are allotted under the FMLA. See Zweifel Dep. at 7, 13. After his regular accrued leave was exhausted on September 24, 2007, Mr. Aubrey began the twelve weeks of unpaid leave under the FMLA, which ended on December 24, 2007. Id. at 18-19, 20. It is Miss Zweifel's understanding that Mr. Aubrey stopped working on June 22, 2006, and never returned in any capacity. Id. at 24, 25. When Mr. Aubrey did not return after the termination of his FMLA leave, and did not indicate to the defendant that he was able

12

to return, the defendant considered him terminated. Id. at 32. Miss Zweifel indicated that the final letter her department received from Miss Richmond regarding Mr. Aubrey was dated December 5, 2007. Id. at 42. The personnel department was never advised that Mr. Aubrey could return to work in any capacity after that letter. Id.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse

v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

### III. DISCUSSION

The Americans with Disabilities Act provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Turner v. The Hershey Company, 440 F.3d 604, 607-608 (3d Cir. 2006) (quoting 42 U.S.C. § 12112(a)).

Under the ADA, prior to filing an employment discrimination action, an employee must file a timely Charge of Discrimination with the EEOC. See 42 U.S.C. § 12117(a) (applying the administrative enforcement procedures of Title VII to ADA claims); see also Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001) (a mandatory prerequisite to filing a lawsuit in federal court alleging a violation of the ADA is the exhaustion of administrative remedies by the filing of a timely Charge with the EEOC). The filing of the Charge with the EEOC is an essential element of the statutory

plan designed by Congress for the purpose of attempting to resolve claims of discrimination before any formal lawsuit is filed. Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976). Accordingly, "suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle." Id. at 398.

For a Charge to be timely, an employee normally must file it with the EEOC within 180 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1). However, in a deferral state such as Pennsylvania, i.e., a state that has a state or local law prohibiting the practice alleged and has established or authorized the state or local authority to grant or seek relief from practices prohibited under the ADA, the employee has not 180 but 300 days from the date of the alleged unlawful employment practice in which to file his Charge of Discrimination. Id.; see also Cardenas v. Massey, 269 F.3d 251, 255 n.2 (3d Cir. 2001).

Mr. Aubrey filed his Charge of Discrimination with the EEOC on May 8, 2009. Accordingly, in order for his claim to be timely here, the alleged unlawful employment practice must have occurred and been communicated to him on or after July 11, 2008. The last day that Mr. Aubrey was physically present at work was in June 2006. He was not the successful candidate for a fire inspector's position in January 2007. His accrued paid leave ran out in September 2007. His unpaid FMLA leave terminated in December 2007. None of these dates which could potentially be used as dates of an alleged

15

unlawful employment practice are within the relevant period. Accordingly, because the amended complaint contains no specific allegations of discrimination within the 300 day period beginning on July 11, 2008 and ending on May 8, 2009, Mr. Aubrey's claim is untimely.

Mr. Aubrey attempts to revive his claim by arguing that his case is one brought under a continuing violation theory. Under such a theory, discriminatory acts that are not individually actionable may survive the limitations time bar. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002)). "When a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time-barred." Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). The Supreme Court has declared, however, that the continuing violation doctrine has no applicability to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" because "[e]ach incident of discrimination and each retaliatory adverse employment action constitutes a separate actionable 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).

Here, the amended complaint fails to allege any specific act of discrimination that occurred within the statute of limitations period, and Mr. Aubrey cannot revive his

time-barred allegations of discrimination without alleging at least one specific, timely violation. No relief can be granted for earlier related acts without alleging a discrete act evidencing the continuing practice which fell within the limitations period. See O'Connor, 440 F.3d at 127 (discrete acts that are individually actionable must be raised within the applicable limitations period, even if they relate to claims otherwise raised in a timely complaint); see also Morgan, 536 U.S. at 113.

Mr. Aubrey alleges that "the defendant failed to engage in an interactive process, whereby he would have been able to meet with his employer to discuss his options and to determine how or when he could be brought back to work." This unlawful employment practice, he insists, continued from the beginning of his leave of absence until the end of his employment which he considers to be the day his pension began, i.e., in March 2010. Thus, because the defendant's failure to engage in the interactive process continued through the relevant period, Mr. Aubrey contends that his Charge is timely. I do not agree.

First, it is unreasonable for Mr. Aubrey to believe that he continued to be an employee of the defendant after the expiration of his FMLA leave. The limited discovery conducted in this case has demonstrated that Mr. Aubrey must have known that before he could return to work for the defendant, he had to be medically cleared. For example, Mr. Aubrey attached as exhibits to his response to the motion to dismiss several documents he had received from the defendant during his leave of absence. A letter from the Fire

Commissioner dated January 12, 2007, advised Mr. Aubrey that he was the only bidder for the inspector position, yet he still had not been medically cleared to return to work:

> At this time we are unable to declare you a successful bidder. This is due to the fact that you have not complied with the condition of getting clearance from the Preferred EAP to return to active duty as stated in my letter of September 28, 2006: *"You are not permitted to return to active duty until you complete an EAP assessment and are cleared per the satisfaction of Preferred EAP and the Bethlehem Fire Department."* Please advise us if there is any change in your status.

See Document #10-6 at 14 (emphasis in original). Another letter dated February 21, 2007, written by Miss Zweifel, asked Mr. Aubrey: (1) to notify the defendant whether he intended to return to work; (2) to request his medical provider to submit more information about his impairment and his capacity to perform work; and (3) to respond to the defendant whether and when he would return to work. See Document #10-6 at 12. In a letter dated September 12, 2007, Miss Zweifel discusses Mr. Aubrey's upcoming FMLA leave and informs him that,

> "You will be required to present a fitness-for-duty certificate prior to being restored to employment. If such certification is not received, your return to work may be delayed until a complete certification is received by the City. . . If the circumstances of your leave change and you are able to return to work earlier than the date indicated in your forthcoming response, you will be required to notify us at least two work days prior to the date you intend to return to work."

See Document #10-4 at 15-16.

Further, Dr. Gonzalez responded on August 9, 2007, to the defendant's request for

18

additional information on Mr. Aubrey's condition. The defendant had asked what duties listed in its Standard Operating Procedures would Mr. Aubrey be unable to perform. Dr. Gonzales responded that Mr. Aubrey would be unable to perform "all and any work-related duties." Then, when asked if there were an accommodation that could be made to make it possible for Mr. Aubrey to perform the duties listed in the Standard Operating Procedures, or to return to work in limited or light duty capacity, Dr. Gonzalez responded, "No." See Document #10-4 at 17. On a Certification of Health Care Provider form dated September 20, 2007, Miss Richmond indicated, "Howard is not able to return to his former place of employment due to the conditions facing him there." See Document #10-4 at 9.

These exhibits submitted by the plaintiff demonstrate that Mr. Aubrey was fully aware that if and when he was able to return to work, it was incumbent upon him to provide the defendant with evidence that he had been medically cleared before returning to the Fire Department. That evidence was never submitted, and it is unreasonable for Mr. Aubrey to think that the defendant would leave his position vacant for several years.

Second, the assertion that Mr. Aubrey continued to be an employee of the defendant until early 2010 is belied by the allegations of constructive discharge he made in his complaint filed in the Court of Common Pleas of Northampton County on May 16, 2008. See Aubrey v. City of Bethlehem, No. C-48-CV-2008-3098, ¶¶ 53, 76. It is disingenuous for Mr. Aubrey to have alleged in state court that he had been constructively

discharged by the same defendant as early as May 2008, while arguing here that he continued to be an employee until his retirement in 2010.

In conclusion, because the amended complaint does not contain specific allegations of disability-based employment discrimination within the period beginning July 11, 2008 and ending May 8, 2009, it is untimely. Furthermore, there is no evidence of a continuing violation beyond the relevant period. Accordingly, I will grant the defendant's motion to dismiss in its entirety.

An appropriate Order follows.